901 F.2d 491
 Ray C. BUCKNER, Plaintiff-Appellee, (88-1404/1649),
Cross-Appellant, (89-1550),
v.
CITY OF HIGHLAND PARK; Highland Park Police Department;
Robert Blackwell; Terry Ford, Chief of Police; John
Holloway, Lieutenant, Jointly and Severally,
Defendants-Appellants (88-1404/1649), Cross-Appellees (89-1550).
 Nos. 88-1404, 88-1649 and 89-1550.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 5, 1990.
Decided April 10, 1990.
 
 Gary A. Benjamin (argued), Schrauger & Dunn, Detroit, Mich., for plaintiff-appellee.
 Richard L. Hurford, Steven H. Schwartz (argued), Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendants-appellants.
 Before MARTIN and BOGGS, Circuit Judges, and PECK, Senior Circuit Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Ray C. Buckner was a detective in the Highland Park, Michigan Police Department. On November 6, 1984, Buckner went to the apartment of Letit Riley to investigate her complaint against an individual for shooting at her. Buckner told Ms. Riley that he had forgotten the proper witness form and that he would return the next day for her written statement.
 
 
 2
 On the evening of November 7, 1984, Buckner returned to Ms. Riley's apartment and gave her a witness complaint form. While Ms. Riley filled out the form, Buckner interrogated her about her sexual activities. He then grabbed her arm, rubbed one of her breasts, and pulled her head toward him. Ms. Riley demanded that he leave her apartment, but Buckner refused. During this incident, Riley received a phone call from Lawrence Bohler. Riley told Bohler to remain on the line, and she continued her efforts to make Buckner leave her apartment. Through the receiver, Bohler heard Riley and Buckner arguing while she told him to leave. Riley finally forced Buckner to leave and then informed Bohler about the incident. Bohler phoned the Highland Park Police Department and lodged a complaint regarding Buckner's conduct.
 
 
 3
 After receiving Bohler's complaint, Chief William Ford and the Lieutenant in Charge of Detectives, John Holloway, immediately went to Riley's apartment to investigate the allegations of Buckner's sexual misconduct. Riley and Bohler gave written statements to Chief Ford that night.
 
 
 4
 Early the next day, November 8, Buckner was contacted at his home by Officer Czarnecki, who told him about Ms. Riley's complaint. Buckner's first act, upon reporting to work that day, was to ask Officer Charles Brookman, the Chief Steward of Teamsters Local 129, which represented the Highland Park Officers, if he had heard anything regarding a complaint filed against him. Later that day, Buckner told Officer Larry Robinson that he had "messed with a woman" the night before and was in trouble. Later still, after learning that Chief Ford wished to discuss the complaint with him, Buckner fled to Henry Ford Hospital and claimed that he needed treatment for alcohol abuse. His medical records, however, show that he was never diagnosed as an alcoholic.
 
 
 5
 On the evening of November 8, Lt. Holloway went to the hospital to interview Buckner. Holloway was accompanied by a union representative, Officer Yopp, to ensure that Buckner's collective bargaining rights were protected. After meeting first with Yopp and then receiving a Miranda warning, Buckner was questioned by Holloway and shown Ms. Riley's written complaint. Buckner refused to comment on the allegations in the complaint. Holloway, under the prior instructions of Chief Ford, suspended Buckner with pay pending further investigation of the charges in the complaint.
 
 
 6
 Chief Ford then requested that the union's Chief Steward, Officer Charles Brookman, advise Buckner of the charges against him and obtain Buckner's account of the Riley incident. Chief Ford told Brookman that he intended to discipline Buckner. Brookman visited Buckner at the hospital, but Buckner refused to make any statement regarding the incident.
 
 
 7
 On November 15, 1984, following eight days of investigation and attempts to obtain a statement from Buckner, Chief Ford made a preliminary determination and recommended to Highland Park Mayor Robert Blackwell that Buckner be discharged. Mayor Blackwell approved the discharge. A copy of the discharge was given to Officer Brookman as Buckner's Union Representative.
 
 
 8
 Pursuant to the collective bargaining agreement between the City of Highland Park and Teamsters Local 129, Buckner filed a written grievance on November 29, 1984 challenging his suspension and subsequent termination. In the grievance, Buckner generally denied the allegations in Chief Ford's recommendation letter and claimed that the City deprived him of procedural due process in the discharge.
 
 
 9
 On March 10, 1986, Buckner filed a lawsuit in Michigan state court alleging that his discharge violated his due process rights because no hearing was held prior to his termination and that the discharge violated the Michigan Civil Rights Act, M.C.L.A. Sec. 37.2101, et seq., because he is an alcoholic and was discharged because of that condition. The defendants removed this suit to federal district court. On May 26, 1987, the district court granted summary judgment to the defendants on the pendent Michigan Civil Rights Claim but denied the parties' cross-motions for summary judgment on the due process claim.
 
 
 10
 On June 26, 1987, the district court requested the parties to re-brief and re-argue their due process claims. On March 22, 1988, after considering the briefs and arguments, the district court awarded summary judgment to Buckner. 681 F.Supp. 1256. The district court found that Buckner had a property interest in his continued employment and that, despite the opportunities for Buckner to give his account of the incident, the pretermination procedures provided to Buckner insufficiently protected his due process rights under the requirements announced in Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The district court's judgment was based, in part, on Officer Brookman's affidavit which stated that he did not visit Buckner until after the termination. This affidavit later proved to be incorrect in terms of the dates involved. The judgment was also based on the district court's analysis of the process due to Buckner under M.C.L. Sec. 38.501, et seq., also known as Act 78. Act 78 provides that Michigan municipalities, which adopt Act 78 as part of their charter, must give employees covered under that act, such as police officers, a written statement of the charges against them and the reasons for the city's actions, an opportunity to answer those charges, and a subsequent public hearing, pending which the employees shall remain in office. See M.C.L. Sec. 38.514. After determining that Buckner's due process rights had been violated, the district court awarded Buckner back pay from November 16, 1984 under Duchesne v. Williams, 821 F.2d 1234 (6th Cir.1987), vacated and reversed, 849 F.2d 1004 (6th Cir.1988) (en banc ).
 
 
 11
 During the course of the district court proceedings, Buckner's grievance proceeded toward an arbitration hearing. In January 1988, the hearing was held and on April 29, 1988, the arbitrator denied Buckner's grievance, finding that the City had "just cause" to discharge him. Contrary to the district court, the arbitrator found that Buckner had notice of the accusations and evidence against him and an opportunity to respond, meeting the due process standards announced in Loudermill.
 
 
 12
 On March 31, 1988, the City filed, under the Eastern District of Michigan's local Rule 17(m), a motion asking the district court to reconsider the summary judgment. At the May 23, 1988 hearing on that motion, the City introduced a second affidavit by Officer Brookman, obtained only three days after the summary judgment ruling, indicating that Brookman visited Buckner prior to the termination. The City introduced evidence that Act 78 was not in effect in Highland Park at the time of the termination. The City also attempted to have the district court take notice of the arbitrator's decision. The court declined to reconsider its judgment, stating that Rule 17(m) requires a party to demonstrate both a palpable defect by which the court and the parties have been misled, and that a different disposition of the case must result from the correction of that defect. The court acknowledged that Act 78 did not apply to the case, but upheld its opinion that the City had failed to meet the Loudermill standards. The court also stated that while Brookman's second affidavit may have changed the chronology of his visit, it still established that Brookman visited Buckner as a union representative, not as an agent of the city. The court noted the contrary findings of the arbitration decision, but did not further reconsider its judgment in light of that finding.
 
 
 13
 Subsequently, the district court awarded attorney's fees to Buckner's counsel as the prevailing party in this civil rights case.
 
 
 14
 The City of Highland Park contends that the district court erred by granting summary judgment to Buckner on his due process claim in view of the standards enunciated in Loudermill. We engage in a de novo review of the district court's grant of summary judgment. Berlin v. Michigan Bell Tele. Co., 858 F.2d 1154, 1161 (6th Cir.1988). Hence, we determine, in the light most favorable to the non-moving party, whether any genuine issue of material fact existed in the record below and whether Buckner was entitled to a judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); Berlin, 858 F.2d at 1161; Hand v. Central Transport, 779 F.2d 8, 10 (6th Cir.1985). The City of Highland Park does not dispute that Buckner had a property interest in his continued employment. The only factual dispute concerned the evidence that Chief Ford sent Officer Brookman to visit Buckner before the termination and Officer Brookman's first affidavit which stated that he visited the hospital after the termination. At the hearing on the motion to reconsider, Officer Brookman's second affidavit revealed the mistake in his first affidavit and resolved the factual dispute. However, the district court ruled that this dispute was not an issue of material fact because Brookman's visit as a union representative was not an opportunity for Buckner to make a statement that could suffice as an opportunity to be heard under Loudermill. Moreover, the court ruled that although Act 78 did not apply to the case, the Loudermill standards were not satisfied. Consequently, there is no genuine issue of material fact on the record before us and summary judgment is appropriate for the disposition of this case. Because Act 78 does not apply to this case and the collective bargaining agreement in force between the City and the police officers' union does not set out particular pretermination procedure, the question becomes whether, as a matter of law, the pretermination procedure afforded to Buckner failed to provide the minimal protections secured by the due process clause of the Constitution.
 
 
 15
 The due process clause requires that, prior to termination, a public employee, with a property interest in his or her public employment, be given oral or written notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer. Loudermill v. Cleveland Bd. of Educ., 844 F.2d 304, 310 (6th Cir.1988), on remand from, Loudermill, 470 U.S. 532, 105 S.Ct. 1487. An application of Loudermill requires us to balance the competing interests of the government in terminating an unsatisfactory employee and the employee in retaining his or her property right in a job. Loudermill, 470 U.S. at 546, 105 S.Ct. at 1495.
 
 
 16
 Loudermill established the minimal protections afforded to a public employee in a pretermination proceeding. The proceeding need not be elaborate. "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." Id. at 545, 105 S.Ct. at 1495 (quoting Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)). The subsequent full and formal post-termination proceedings provided to the discharged plaintiff under state law was a significant factor in the Court's analysis in Loudermill.
 
 
 17
 In this case, an elaborate system of post-termination hearings, culminating in a formal arbitration proceeding, was provided to Buckner under the collective bargaining agreement between the City and the Teamsters. The usual pre-termination process for discharging Highland Park police officers involved a meeting between Chief Ford, the officer against whom discipline was considered, and a union representative, at which the formal charges were discussed and Chief Ford heard the officer's views. Because the usual department practices were not strictly followed, we analyze Buckner's termination process under the guidelines established in Loudermill.
 
 
 18
 Buckner was visited in the hospital during his alleged bout with alcoholism and confronted with the charges against him by the union representative, Officer Yopp, and Lt. Holloway. Moreover, the union's Chief Steward later visited him in the hospital and presented him with Ms. Riley's written complaint. Hence, the first two Loudermill requirements were satisfied. While lacking the formalities of the City's usual predischarge proceedings, Lt. Holloway, as Chief Ford's representative, served in virtually the same capacity as Chief Ford in the standard termination proceedings. At arbitration, evidence supported the arbitrator's conclusion that Officer Brookman also served as Chief Ford's agent for the purposes of giving Buckner notice of the charges and an accounting of the evidence against him. Buckner received both oral and written notice of the charges and oral and written presentations of the evidence against him. The fact that the union representatives and Lt. Holloway may have acted pursuant to the provisions of the collective bargaining agreement or pursuant to a criminal investigation does not in any way taint the oral and written notice Buckner received, nor does it affect the fact that the charges were explained to him.
 
 
 19
 Buckner argues that the context of the investigation did not provide him with notice that his employment status was threatened by Ms. Riley's complaint against him. This argument strains credulity because Buckner's first act, upon reporting to work the day after the Riley incident, was to inquire whether the Chief Steward knew about a complaint against him. Buckner knew that he had both criminal and employment difficulties stemming from his behavior. While the charges against him were not formally presented, Buckner knew the gist of the allegations against him.
 
 
 20
 The critical element of the Loudermill requirements is the opportunity for the employee to respond to the employer's evidence. The chance to be heard, to present one's side of the story, is a fundamental requirement of any fair procedural system. See Loudermill, 470 U.S. at 546, 105 S.Ct. at 1495. The opportunity to respond must be a meaningful opportunity to prevent the deprivation from occurring. See Daniels v. Williams, 474 U.S. 327, 338, 106 S.Ct. 662, 678, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring). The district court felt that the opportunity to respond to the charges afforded to Buckner was not meaningful. We disagree.
 
 
 21
 In the presence of a union representative, Lt. Holloway specifically asked Buckner to comment on the allegations made by Ms. Riley. Buckner declined to do so and was suspended with pay. When Officer Brookman visited Buckner, Buckner inquired about the charges against him and Brookman's discussions with Chief Ford regarding those charges. Buckner was not suffering from any mental or physical disability which prevented him from offering his response to the complaint.
 
 
 22
 Contrary to Buckner's assertions, Loudermill and pretermination due process do not require the employer to tell the employee that the employee will be terminated if no other evidence is offered to the employer. The employee, being confronted with the charges against him or her and being offered the chance to give a version of the incident, is responsible for the choice to not offer any competing evidence. Deretich v. Office of Administrative Hearing, State of Minn., 798 F.2d 1147, 1150-51 (8th Cir.1986). When an employee is faced with charges that a reasonable person would recognize as jeopardizing an employment future, extra pretermination due process obligations are not placed on the employer. Affording an employee the opportunity to respond after being confronted with the charges is all that pretermination due process requires of the employer. Here, Buckner was offered the opportunity to provide evidence which might have dissuaded the City of Highland Park from terminating him for his actions in Ms. Riley's apartment. He failed to do so, and the City properly terminated him based on the "just cause" provided by the only credible evidence in their possession.
 
 
 23
 While an interrogation does not, as a matter of law, equal a full and fair opportunity to respond to charges which jeopardize one's employment, Lt. Holloway's interrogation was clearly a part of a system which was designed to provide an initial check against a mistaken discharge. Any response made by Buckner would have clearly been communicated by Lt. Holloway to Chief Ford, who had the power to reverse a suspension. Moreover, the interrogation was held in the presence of a union representative, making it virtually the same process as the more formal routine discharge process held before Chief Ford. Consequently, the right of the employee to respond before the official in charge of the termination was offered to Buckner, who declined to take advantage of that right. See Duchesne, 849 F.2d at 1006.
 
 
 24
 Buckner contends that he was unable to respond to the charges because of his fifth amendment privilege against self-incrimination. He claims that the City, by refusing to offer him the protections of Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), essentially forced him to remain silent. In Garrity, the court held that confessions by public officials under a threat of removal from their positions may not be used in subsequent criminal proceedings against them. Buckner, however, was not threatened with discharge for refusing to make a statement regarding the incident at Ms. Riley's apartment. Therefore, Garrity does not apply to this case.
 
 
 25
 Alternatively, Buckner argues that under Lefkowitz v. Cunningham, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977), it is unconstitutional for a government employer to terminate an employee for asserting the privilege against self-incrimination. Lefkowitz holds that it is unconstitutional to terminate an employee solely for invoking the privilege. Officer Buckner was not fired for asserting his privilege against self-incrimination. He was fired for molesting a citizen of Highland Park, and his discharge was upheld by the arbitrator.
 
 
 26
 "[T]he state has a choice between either demanding an accounting from [the employee] on job-related matters, in which case it cannot use the statements in a criminal prosecution, or prosecuting him, in which case it cannot demand an accounting. The employer may ask 'questions specifically, directly, and narrowly relating to the performance of his official duties,' and demand an accounting even though the answers tend to incriminate." D'Aquisto v. Washington, 640 F.Supp. 594, 622 (N.D.Ill.1986) (quoting Gardner v. Broderick, 392 U.S. 273, 278, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968)) (other citations omitted). Thus, while the City may not use coerced answers in a criminal proceeding against the employee, it may terminate that employee for refusing to answer, so long as that termination is not solely due to the invocation of the right against self-incrimination.
 
 
 27
 Loudermill does not require that the opportunity to respond to the allegations definitely resolves the propriety of the discharge. Rather the pretermination hearing provides an initial check against mistaken terminations by the employer--an opportunity to determine if there are reasonable grounds to believe the charges against the employee are true and if they support any proposed action against that employee. Loudermill, 470 U.S. at 545-46, 105 S.Ct. at 1495. The minimal requirements of that opportunity are viewed in terms of the balance between the interests of the government and the interests of the employee. Here, the employee is a police officer charged with the protection of the citizens of Highland Park. The government interest in effective law enforcement is extremely high and the need to speedily replace public safety officers who abuse their authority is obvious. Requiring the City to provide an elaborate pretermination process hampers its "interest in quickly removing an unsatisfactory employee." Loudermill, 470 U.S. at 546, 105 S.Ct. at 1495. In view of this strong interest, Buckner's interest in retaining his job was adequately protected by the initial procedures which indicated that a mistaken termination was not being made. Moreover, the opportunity for a post-termination proceeding under the collective bargaining agreement provided Buckner with the opportunity to challenge his termination in a more detailed fashion.[1]
 
 
 28
 We, therefore, hold that the City of Highland Park afforded Officer Buckner the minimal due process he was entitled under Loudermill. Consequently, the district court's grant of summary judgment to Buckner is reversed because he was not entitled to a judgment as a matter of law. Because we reverse the district court, we need not consider the district court's refusal to reconsider the summary judgment decision under Eastern District of Michigan local Rule 17(m), and we vacate Buckner's back pay award. We also vacate the award of attorney's fees to Buckner's counsel because Bucker is not a "prevailing party" in this case. See Loudermill, 844 F.2d at 312-13.
 
 
 29
 There being no issue of fact, the case is remanded to the district court for entry of judgment in favor of the City of Highland Park and the other defendants and the dismissal of Buckner's complaint.
 
 
 
 [1]
 The district court also relied on Act 78 of the Public Acts of 1935 as providing Buckner with extensive pretermination protections which were not utilized by the City. At the time the district court made the summary judgment determination, the court believed that Act 78 was in effect and determined the process by which Buckner should have been terminated. At the hearing on the motion for reconsideration, the court acknowledged that Act 78 did not apply to this case, but that the court's due process analysis under Loudermill remained unaffected. Consequently, we need not explore the court's analysis under Act 78 because those provisions were not available to employees of the City of Highland Park at the time of the termination