United States Court of Appeals,

Eleventh Circuit.

No. 96-5190.

Michael HARRISON, Plaintiff-Appellant,

v.

Richard P. WILLE, individually and in his official capacity as Sheriff of Palm Beach County,
Bennie Green, Michael S. Tucker, Daniel McBride, individually and in their official capacities of
the Palm Beach County Sheriff's Office, Defendants-Appellees.

Jan. 9, 1998.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-8693-CV-
WJZ), William J. Zloch, Judge.

Before EDMONDSON, Circuit Judge, and CLARK and WELLFORD[*], Senior Circuit Judges.

PER CURIAM:

Plaintiff appeals the grant of summary judgment in favor of Defendants on Section 1983

claims. Plaintiff alleges violations of the Fourteenth Amendment's guarantee of procedural due

process and the Fifth Amendment. We hold that Plaintiff failed to allege facts sufficient to establish

either of these violations, and we affirm the grant of summary judgment for Defendants.

*Background*

The basic facts in this case are undisputed.

In 1985 Plaintiff Michael Harrison was hired as a deputy of the Palm Beach County Sheriff's

Office. During Plaintiff's employment with the sheriff's office, either Defendant Richard P. Wille

(1977-95) or Defendant Charles McCutcheon was the county's sheriff. The remaining

Defendants—Bennie Green, Michael S. Tucker, and Daniel McBride—were all deputies in the

---

[*]Honorable Harry W. Wellford, Senior U.S. Judge for the Sixth Circuit, sitting by
designation.

sheriff's office.

Beginning in 1991, items were being stolen from the evidence room at the sheriff's office. In 1994, an internal investigation, and a concurrent criminal investigation, were begun. Plaintiff was a suspect because the first of several thefts occurred at Plaintiff's substation, and the receipt and deletion of the evidence from the records seemed to have occurred during Plaintiff's times on duty.[1]

On three occasions, Plaintiff, as one of several suspects, was asked to provide statements to investigating deputies about the thefts. Plaintiff appeared before an investigator each time and was given his *Garrity* rights.[2] Following the last statement, Plaintiff was placed on administrative leave with pay.

After the three interviews, Plaintiff was given notice that a predisciplinary conference would be held. This notice was provided at least one day before the first conference. At this conference Plaintiff was told that another theft had occurred during his shift. Defendant Green also explained the charges against Plaintiff and summarized for Plaintiff the information gained so far by the internal investigation.

At this conference, Plaintiff was given a form explaining his *Garrity* rights but was informed that no statements were being compelled—he need not say anything. Plaintiff's attorney advised him that, because no statements were being compelled, *Garrity* immunity did not exist and that Plaintiff

---

[1] Items were logged into the evidence room by the deputy on duty who would sign a receipt for the evidence. When the evidence was then removed, for whatever purpose, the evidence was deleted from the computer inventory list, and a "deletion log" was created.

[2] *Garrity* rights provide a public employee with immunity; and when given, protect an employee so that statements made for internal investigations will not be used against the employee in a criminal prosecution. *Lefkowitz v. Turley,* 414 U.S. 70, 79-80, 94 S.Ct. 316, 323, 38 L.Ed.2d 274 (1973); *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

should exercise his Fifth Amendment right against self-incrimination.[3]  Plaintiff remained silent—exercising his right to do so under the Fifth Amendment.

After the predisciplinary conference, Plaintiff was suspended without pay.[4]  The sheriff's office allows appeals from such disciplinary decisions to the Hearing Review Board.  Plaintiff's counsel filed a timely appeal, but asked that the appeal be postponed to allow for the completion of the ongoing internal and criminal investigations—so Plaintiff would not face the repercussions of incriminating statements made during those proceedings.  The appeal was postponed.

Before the appeal was reinitiated, Plaintiff received written notification of the misconduct charges against him, now nine (9) incidents.  This notice was provided to Plaintiff on 22 August 1994.  Soon after notice of the charges, Plaintiff and his counsel were permitted to review the internal affairs' investigation report, which then included ten (10) instances of theft.  Plaintiff's counsel raised two issues about the accuracy of the report at that time.

In September, a second predisciplinary conference was held, which again resulted in Plaintiff's silence after receiving no *Garrity* protection.  In October 1994, Plaintiff was terminated.

Again, Plaintiff's counsel requested the appeal—now an appeal of not just suspension, but termination—before the Hearing Review Board be postponed until completion of the criminal investigation.  Review was again postponed.  The criminal investigation was completed in February 1995 and resulted in no charges against Plaintiff.

In April 1995, the Hearing Review Board (now called a "Termination Review Board") heard

---

[3]Plaintiff was accompanied by legal counsel at all points after his initial interview and statement.

[4]Articles appeared in local newspapers about the investigation and Plaintiff's suspension.  It is based upon these articles that Plaintiff makes his claim that he was deprived of liberty (by the loss of his good reputation) without due process.

Plaintiff's challenge to his termination.  At that hearing, Plaintiff was provided *Garrity* protection; and he provided information in his own defense.  By a 3-2 vote the Board sustained Plaintiff's termination;  this decision was ratified by the current sheriff, Defendant McCutcheon.

Plaintiff filed suit against Defendants—all members of the sheriff's office involved with the investigation—under 42 U.S.C. § 1983.  Plaintiff alleged violations of his procedural due process rights and his substantive due process rights.[5]

The district court, in response to motions filed by all Defendants, granted summary judgment for Defendants on all claims.  Plaintiff appeals that decision.

*Discussion*

*I. Fifth Amendment Violation*

Plaintiff alleges that the failure to afford him *Garrity* protection at the two predisciplinary conferences violated his Fifth Amendment right against self-incrimination.  Plaintiff claims he was terminated for his exercise of this right.  The record does not support that conclusion.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend.  V. "The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal

---

[5]Plaintiff alleged his Fifth Amendment right against self-incrimination had been violated by the refusal to provide *Garrity* protection at every stage of the administrative process.  He made this claim under the guise of a substantive due process violation.  But where a particular amendment "provides an explicit textual source of constitutional protection" against the conduct of which Plaintiff complains, "that Amendment, not the more generalized notion of "substantive due process,' must be the guide for analyzing" the claim. *Graham v. Connor,* 490 U.S. 386, 395 & n. 10, 109 S.Ct. 1865, 1871 & n. 10, 104 L.Ed.2d 443 (1989).  Thus, Plaintiff's substantive due process claim will be analyzed under the Fifth Amendment's prohibition of compelled testimony and self-incrimination.

proceedings." *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973).

In *Garrity v. New Jersey,* (establishing "*Garrity* rights"), the Supreme Court held that, when public employees are given the choice of either forfeiting their jobs or incriminating themselves, the Fifth Amendment has been violated because a forced decision of that kind is "likely to exert such pressure upon an individual as to disable him from making a free and rational choice." 385 U.S. 493, 497, 87 S.Ct. 616, 618, 17 L.Ed.2d 562 (1967) (citation omitted). In *Garrity,* police officers subject to an internal investigation were told, before being questioned, that anything they said could be used against them and that they had a right to say nothing; but the officers were also told that if they refused "to answer [they] would be subject to removal from office." *Id.* at 494, 87 S.Ct. at 617. This conduct, the Court held, is a violation of the Fifth Amendment. *Id.* at 498, 87 S.Ct. at 619.

Later cases explained that *Garrity* only prohibits the *compulsion* of testimony that has not been immunized. *See Turley,* 414 U.S. at 82-83, 94 S.Ct. at 324-25. In other words, the employee may not be both compelled to testify (or make a statement) *and* be required to waive his Fifth Amendment rights. *Gardner v. Broderick,* 392 U.S. 273, 276-77, 88 S.Ct. 1913, 1915-16, 20 L.Ed.2d 1082 (1968). An "employee's rights are imperilled only by the combined risks of both compelling the employee to answer incriminating questions and compelling the employee to waive immunity from the use of those answers." *Arrington v. County of Dallas,* 970 F.2d 1441, 1446 (5th Cir.1992).

The result of these prohibitions is that a public employee cannot be terminated *solely* for the exercise of his Fifth Amendment rights. *See, e.g., Lefkowitz v. Cunningham,* 431 U.S. 801, 804, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977); *Arrington,* 970 F.2d at 1446; *Buckner v. City of Highland Park,* 901 F.2d 491, 496 (6th Cir.1990); *Benjamin v. City of Montgomery,* 785 F.2d 959 (11th Cir.1986); *Hoover v. Knight,* 678 F.2d 578, 580 (5th Cir.1982) (citing *Gardner,* 392 U.S. 273, 88

S.Ct. 1913, 20 L.Ed.2d 1082, and *Uniformed Sanitation Men v. Sanitation Commissioner of New York,* 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 [1968] ).   Considered along with other evidence, however, an adverse inference may be drawn from an employee's exercise of his Fifth Amendment right to silence.  *Hoover,* 678 F.2d at 582 & n. 1.[6]

In this case, Plaintiff was not faced with the choice to make a statement or to be fired.  First, Plaintiff, when not given *Garrity* protection, was never compelled to make a statement.  Second, Plaintiff cannot show (and does not contend) that he was terminated solely for the exercise of his Fifth Amendment rights.

The termination of Plaintiff's employment came after a lengthy investigation in which other evidence incriminated him.  Plaintiff does not dispute that other evidence about the thefts, besides his silence, led to Plaintiff's leave without pay and to his ultimate termination.  Plaintiff signed the receipts for much of the stolen evidence, and the computer documented that some of the missing evidence had been deleted during Plaintiff's shifts.[7]

To succeed in this action Plaintiff must submit sufficient facts upon which a reasonable jury could conclude that he was terminated *solely* because he remained silent at the predisciplinary conferences.  Plaintiff has not met this burden.

Plaintiff must also show that he was compelled to waive his Fifth Amendment rights.  "The

---

[6]Plaintiff argued that to show a Fifth Amendment violation he need only show that his exercise of the right to remain silent was a substantial or motivating factor in his dismissal.  This idea is not the law governing Fifth Amendment claims.  Because Plaintiff only argues that his exercise of his Fifth Amendment rights was *a* substantial or motivating reason for his termination, he does not properly allege facts to support his action under the correct legal standard—that his invocation of the Fifth Amendment was the *sole* reason for his termination.

[7]Plaintiff claims that the time and date functions of the computers were often off by as much as two days and that the documented dates and times for the deletion of the evidence are not accurate.  But Plaintiff's counsel had an opportunity to point this supposed error out to investigators after he reviewed the investigation report.

government's mere failure to tender immunity cannot amount to an attempt to compel a waiver of immunity." *Arrington,* 970 F.2d at 1446. When a person has "a free choice to admit, deny, or refuse to answer. This is full vindication of the [F]ifth [A]mendment privilege against self-incrimination." *Hoover,* 678 F.2d at 581 (citation omitted).

Because Plaintiff does not present facts to show that he was, at the same time, both compelled to testify and forced to waive his Fifth Amendment right against self-incrimination, and because Plaintiff alleges no facts that show, and does not contend, that he was terminated solely in response to his exercise of his Fifth Amendment rights, summary judgment was proper.

*II. Procedural Due Process*

Plaintiff also fails to establish issues of material fact about his procedural due process claims. "An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case.' " *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (citation omitted).[8] Plaintiff raises procedural due process claims on both his property interest in his employment and his liberty interest in his reputation.[9]

There must be "some kind of hearing" before termination of an employee with a protected

---

[8]We accept that Plaintiff did have a property interest in his position with the sheriff's office—a proposition undisputed by Appellees.

[9]Assuming Plaintiff had a protected liberty interest in this case, the only process due Plaintiff to protect his liberty interest was a "name clearing hearing." *Warren v. Crawford,* 927 F.2d 559, 565 (11th Cir.1991). The hearing need not take place before termination or the publication of the damaging information. *Campbell v. Pierce County, Ga.,* 741 F.2d 1342, 1345 (11th Cir.1984). Plaintiff must have the opportunity "to support his allegations by argument however brief, and, if need be, by proof, however informal." *Id.* (citations omitted). Because this opportunity is not as strict as the process required before one can be deprived of a property interest, due process was satisfied by the same opportunities provided for notice and hearing for the termination itself—the predisciplinary conferences and subsequent Review Board Hearing.

property interest in his employment. *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493 (citation omitted). The termination of employment is a severe deprivation, although the interest of the sheriff's office in terminating deputies for misconduct is great. *See Loudermill,* 470 U.S. at 543, 105 S.Ct. at 1494 (severity of termination); *Buckner,* 901 F.2d at 497 ("The government interest in effective law enforcement is extremely high...."). The importance of the Plaintiff's property interest makes it necessary to provide some sort of pretermination hearing, which includes notice and an opportunity to be heard.

*A. Notice*

Notice was sufficient if it notified Plaintiff of the charges and was timely, whether oral or written. *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. Here, Plaintiff was afforded ample notice of the charges against him and of the evidence discovered by the investigation before each stage of the disciplinary process. He and his counsel were permitted to review the investigation report; and, at the first predisciplinary conference, Defendant Green told Plaintiff of the charges and the evidence against him—specifically the evidence contained in the deletion log.

*B. Opportunity To Be Heard*

Plaintiff had several opportunities to be heard. All three of his initial statements and the two separate predisciplinary conferences provided Plaintiff the opportunity to present evidence in his defense—to tell his side of the story. His choice to exercise his Fifth Amendment privileges does not negate the fact that the opportunity existed.[10]

"Affording an employee the opportunity to respond after being confronted with the charges

---

[10]Plaintiff argues that, to provide a meaningful opportunity to be heard, immunity must be given at every stage of an investigation into police misconduct. This notion is not the law. *See generally Buckner,* 901 F.2d 491, 496 (6th Cir.1990); *see also Garrity,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562; *Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494.

is all that pretermination due process requires of the employer." *Buckner,* 901 F.2d at 496. "The fact that [Plaintiff] had to choose whether to talk or to remain silent offends neither the [F]ifth nor the [F]ourteenth [A]mendment." *Gniotek v. City of Philadelphia,* 808 F.2d 241, 245 (3d Cir.1986).

Before termination, a full evidentiary hearing is not required. *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495. Nor does the pretermination hearing have to establish conclusively the propriety of the termination. *Id.* Plaintiff need only be given an opportunity to present his side of the story. Plaintiff here had that opportunity on several occasions—at both predisciplinary conferences and the three preceding interviews. A full post-termination proceeding was also held at which Plaintiff presented evidence in his defense.

*Conclusion*

The material facts are undisputed. And, Defendants were entitled to a judgment as a matter of law. Therefore, we affirm the judgment of the district court.

AFFIRMED.