**Lisa MCDANIEL, Plaintiff–Appellee,**

v.

**The PRINCETON CITY SCHOOL DISTRICT BOARD OF EDUCATION and David D. Baker in his Official Capacity, Defendants–Appellants.**

No. 00–4238.

United States Court of Appeals, Sixth Circuit.

Aug. 15, 2002.

Before KRUPANSKY and COLE, Circuit Judges; and DUGGAN,* District Judge.

DUGGAN, District Judge.

In this § 1983 action, Plaintiff–Appellee ("Plaintiff") alleges a violation of her due-process rights in connection with the termination of her employment by Defendants–Appellants ("Defendants"). The district court denied Defendants' motion to dismiss for failure to state a claim and Defendants' motion for summary judgment, and granted, in part, Plaintiff's motion for summary judgment, and awarded her back pay and attorney fees.

### Background

Plaintiff Lisa McDaniel began her employment with the Princeton City School District Board of Education ("the School Board") as a special education teacher in 1985. As a member of the Princeton Association of Classroom Educators ("PACE"), she was covered under a collective bargaining agreement ("the CBA") between PACE and the Princeton City School District. The CBA provided that no member

would be disciplined or terminated "without good and just cause." Section 4.023 of the CBA provided that:

A predisciplinary hearing shall be held prior to any disciplinary action to suspend or terminate any bargaining unit member, unless the member specifically waives the hearing in writing. The member must have advance notification of the purpose of the hearing, and shall have the right to have an Association representative at the hearing.

On March 17, 1997, Plaintiff received a "Notice of Pre–Disciplinary Hearing" from the School Board that stated:

Reasonable grounds exist to support the belief that disciplinary action must be taken in regard to your conduct. You have the right to a limited hearing prior to the imposition of disciplinary action. You may bring a union representative with you if you choose.

A pre-disciplinary hearing has been scheduled for Wednesday, March 19, 1997 at 8:30 a.m. before Dr. Baker and Ms. Rusche at Central Office in Dr. Baker's office.

The purpose of a pre-disciplinary hearing is to give you the opportunity to present your explanation regarding the following:

— attendance pattern

— failure to remain in classroom

— excessive personal calls on work time

— neglect of duty

In a letter dated April 8, 1997, Assistant Superintendent David Baker advised Plaintiff of the following:

As a result of the pre-disciplinary hearing, held March 19, 1997, the follow-

---

* The Honorable Patrick J. Duggan, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

ing conclusions can be made. You have a pattern of being out of your assigned duty area going back to 1994. In fact you are frequently seen away from your classroom when your students are in session. You have been repeatedly warned, reprimanded, directed and suspended for lack of lesson plans, lack of student behavior plans, inappropriate discipline of students, and failure to remain in your classroom.

This is unacceptable behavior for a teacher. If a teacher expects to maintain a teaching position and be paid for that position, the very least she must do is be in the classroom assigned to her and stay there while the students are there. It is also not unreasonable to expect that a teacher will have a behavior plan for her students and a lesson plan on what she is going to teach for the day.

As a result of this pattern of neglect of duty, I will recommend, to the board of education, at their April 15, 1997 regularly scheduled meeting, that your teaching contract be terminated at the end of the day, April 15, 1997. If the board accepts the recommendation of termination, you will be served with formal notice of termination.

In a letter dated April 15, 1997, the School Board advised Plaintiff that it was terminating her continuing teaching contract effective April 14, 1997.

Plaintiff filed a grievance challenging her termination, pursuant to the CBA. The arbitrator issued an award on August 14, 1998, which voided Plaintiff's discharge, ordered her reinstatement, and provided that Plaintiff receive backpay and benefits. However, the School Board did not reinstate Plaintiff at that time. Instead, it filed suit in the Hamilton County Court of Common Pleas seeking to overturn the arbitration award.

On January 7, 2000, the Hamilton County Court of Common Pleas affirmed the arbitrator's award. After the arbitrator's award was affirmed, the School Board reinstated Plaintiff, but did not restore her seniority or provide her back pay and benefits as ordered by the arbitrator.

Prior to her reinstatement, Plaintiff filed this § 1983 action alleging that she had a property interest in her continued employment with the School District, and that in violation of her constitutional rights, she was deprived of that interest without due process of law.

On March 30, 1999, the district court denied a motion to dismiss filed by Defendants.

Plaintiff and Defendants later filed cross motions for summary judgment. In an Order dated November 18, 1999, the district court denied Defendants' motion for summary judgment. In addition, the court granted, in part,[1] Plaintiff's motion for summary judgment and ordered "that summary judgment be entered in favor of Plaintiff against Defendant Princeton City School District Board of Education and against Defendant David Baker in his professional capacity."

Plaintiff then filed a motion in support of damages and fees, and Defendants filed a memorandum in opposition. On September 12, 2000, the district court awarded Plaintiff $108,883.32 in back wages, $22,565.84 in retirement contributions, $3,471.80 in health insurance costs, and

---

1. The district court did not grant Plaintiff's request that Defendant Baker be held individually liable, as the court concluded that Plaintiff's complaint asserted claims against Baker in his professional capacity only.

$37,854.97 [2] in attorney fees and costs, for a total award of $172,675.93.

## Discussion

On appeal, Defendants assert that: 1) the district court erred in denying their motion to dismiss and motion for summary judgment; 2) the district court erred in granting, in part, Plaintiff's motion for summary judgment; and 3) the attorney fees awarded to Plaintiff by the district court were excessive.[3]

## I. Defendants' Motion to Dismiss & Cross Motions for Summary Judgment

Whether the district court properly denied Defendants' motion to dismiss and motion for summary judgment, and properly granted, in part, Plaintiff's motion for summary judgment are legal questions that we review *de novo*. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir.2002); *Brannam v. Huntington Mort. Co.*, 287 F.3d 601, 603 (6th Cir.2002).

Defendants contend that the district court erred in denying their motion to dismiss and motion for summary judgment, because the facts alleged in the complaint "establish that [Plaintiff] received all the process to which she was due" prior to her termination. On the same basis, Defendants contend the district court erred in granting, in part, Plaintiff's motion for summary judgment.

We conclude that the district court did not err in denying Defendants' motion to dismiss or motion for summary judgment,

or in granting, in part, Plaintiff's motion for summary judgment.

■ In her complaint, Plaintiff asserts a claim under 42 U.S.C. § 1983, asserting that she had a property interest in her job, and that Defendants violated her due process rights by failing to give her the process to which she was entitled before terminating her employment.

"[I]n a § 1983 due process claim for deprivation of a property interest, a plaintiff must first show a protected property interest. Only after meeting this requirement can the plaintiff prevail by showing 'that such interest was abridged without appropriate process.'" *Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir.1997). Thus, Plaintiff's due process claim depends on her having had a property right in continued employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). If she did have such a right, the state could not deprive her of that property right without due process. *Id.*

Such property rights are not created by the Constitution itself. Rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). "Frequently a public employee can point to a statute as giving him a protected property interest in the job he holds." *Sharp v. Lindsey*, 285 F.3d 479, 487 (6th Cir.2002). In this case, Plaintiff asserts that she had a protected property interest in her continued employment pursuant to the CBA and pursuant to

---

**2.** $34,231.75 of this amount was attorney fees.

**3.** Originally, Defendants also asserted that the district court erred in awarding back wages to Plaintiff. However, the parties have notified the Court that since the filing of this appeal, Defendants have paid Plaintiff all the back wages she is entitled to, thereby rendering that issue moot.

OHIO REV. CODE § 3319. Article IV, section 4.021 of the CBA provided that no member would be disciplined or terminated "without good and just cause." Section 3319 provides, in pertinent part, that:

The contract of any teacher employed by the board of education of any city, exempted village, local county, or joint vocational school district may not be terminated except for gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause. Before terminating any contract, the employing board shall furnish the teacher a written notice signed by its treasurer of its intention to consider the termination of his contract with full specification of the grounds for such consideration.

OHIO REV. CODE § 3319.16. Thus, we are satisfied that the CBA and OHIO REV. CODE § 3319 create a protected property interest in Plaintiff's continued employment. *Loudermill*, 470 U.S. at 538–39, 105 S.Ct. at 1491.

Given that Plaintiff had such a protected property interest in her continued employment, the state could not deprive her of that property interest without "due process." The question then becomes, what process was Plaintiff entitled to prior to her termination.

"*Loudermill* established the minimal protections afforded to a public employee in a pretermination proceeding." *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir.1990). "The due process clause requires that, prior to termination, a public employee, with a property interest in his or her public employment, be given oral or written notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer." *Id.* (citing *Loundermill*, *supra*).

 Defendants contend that they provided such process to Plaintiff prior to her termination, as they gave Plaintiff written notice of the charges against her and provided her with a pretermination hearing where she was able to respond to those charges. Defendants stress that the "Notice of Predisciplinary Hearing" sent to Plaintiff stated that she would have an opportunity to present her explanation regarding the charge of "neglect of duty," and that she was ultimately terminated for "a pattern of neglect of duty."

The Notice sent to Plaintiff mentioned a general charge of "neglect of duty," but also listed specific charges of "attendance pattern," "failure to remain in classroom," and "excessive personal calls on work time." Each of these three specific charges can be viewed as falling under the general charge of "neglect of duty." At the hearing, Plaintiff responded to those specific charges.

However, following the hearing, Plaintiff was discharged for a "pattern of neglect of duty" that included specific charges that she lacked lesson plans, lacked student behavior plans, and inappropriately disciplined students. As none of those charges were mentioned in the Notice sent to Plaintiff, Plaintiff had no opportunity to respond to those charges prior to her termination.

"The critical element of the *Loudermill* requirements is the opportunity for the employee to respond to the employer's evidence. The chance to be heard, to present one's side of the story, is a fundamental requirement of any fair procedural system," and the "opportunity to respond must be a meaningful opportunity to prevent the deprivation from occurring." *Buckner*, 901 F.2d at 495. By failing to provide Plaintiff with any notice of three of

the specific charges against her, Defendants denied Plaintiff the opportunity to respond to those charges prior to her termination which was based, at least in part, on those charges.

Accordingly, we agree with the district court that the Defendants violated Plaintiff's constitutional rights by terminating her employment without first providing her with proper pretermination notice and an opportunity to be heard on the charges against her.

## II. Attorney Fee Award

Defendants also challenge the district court's award of attorney fees, made under 42 U.S.C. § 1988, asserting that: 1) the district court erred in awarding attorney fees because Plaintiff's attorney's fees were paid by her labor organization; and 2) the amount of the award was excessive.

"We review a district court's award of attorneys fees under 42 U.S.C. § 1988 based on an abuse of discretion standard." *Wilson–Simmons v. Lake County Sheriff's Dept.*, 207 F.3d 818, 823 (6th Cir.2000).

■ The district court properly rejected Defendants' first argument, citing *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). In *Blanchard v. Bergeron*, the United States Supreme Court instructed: "[t]hat a nonprofit legal services organization may contractually have agreed not to charge *any* fee of a civil rights plaintiff does not preclude the award of a reasonable fee to a prevailing party in a § 1983 action, calculated in the usual way." *Blanchard v. Bergeron*, 489 U.S. at 95, 109 S.Ct. at 945 (emphasis in original). The Court went on to state that "a plaintiff's recovery will not be reduced by what he must pay his counsel," and "where there are lawyers or organizations that will take a plaintiff's case without compensation, that fact does not bar the award of a reasonable fee." *Blanchard v. Bergeron*, 489 U.S. at 94, 109 S.Ct. at 944–45.

■ Defendants also assert that the amount of the award was excessive because the number of hours expended by Plaintiff's counsel were unreasonable simply because they were almost three times the total hours expended by Defendants' counsel. The district court concluded that the amount of time expended by the attorneys and the hourly rates charged were reasonable and awarded Plaintiff $34,231.75 in attorney fees. We do not find that the district court abused its discretion in awarding the claimed attorney fees.

## Conclusion

For the reasons set forth above, we **AFFIRM** all of the above challenged rulings of the district court.