[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12231
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-00114-JRH-WLB

BOBBY STRICKLAND,

Plaintiff - Appellant,

versus

COLUMBIA COUNTY BOARD OF EDUCATION,
COLUMBIA COUNTY SCHOOL SYSTEM
DEPARTMENT OF TRANSPORTATION,
CHARLES R. NAGLE,
Superintendent of Schools,
DEWAYNE PORTER,
Director of Transportation,
ROBERT JARRELL,
Assistant Superintendent, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(November 6, 2012)

Before MARCUS, KRAVITCH and BLACK, Circuit Judges.

PER CURIAM:

Bobby Strickland appeals a district court order granting summary judgment in favor of his former employer on his claims that the employer violated his right to procedural due process and his rights under his employer's agreement with his union.  After thorough review, we affirm.

## I.

In 1995, the Columbia County Board of Education (the Board) hired Strickland as a school bus driver.  The Board categorized all bus drivers such as Strickland as "classified," or "non-certified" employees, and did not issue these employees an employment contract.  On the other hand, "certified" employees such as teachers and administrators were issued an employment contract as required by Georgia law.  *See* O.C.G.A. § 20-2-211.

In 2007, as a result of unrelated litigation also involving school bus drivers, the Transport Workers Local Union No. 279 (the Union) entered into a Settlement Agreement with the Board.  In that agreement, the Board agreed that it would "draft an expanded grievance policy (GAE-1) for all classified employees, including employees of the Transportation Department."  (emphasis in original).  This language — the GAE coding and the reference to an expanded policy — later

2

formed part of the basis of this dispute. The agreement further provided:

> Pursuant to this expanded policy, classified employees with at least 24 months of continuous service with the Board of Education can appeal to the Board of Education or its Personnel Committee any recommendation to terminate such employee(s) before final action to terminate is taken by the Board. The Administration will continue implementing procedures on due process. The Administration will prepare procedures to define the process.

In 2009, Strickland joined the Union.

Shortly thereafter, on December 2, 2009, Strickland was involved in an incident while on his bus route. The parties dispute the details, but they agree that Strickland was involved in a confrontation with some of the students on his bus.

Defendant Dewayne Porter, the Board's Transportation Director, was subsequently notified of the incident. Porter, along with defendant Robert Jarrell, the Board's Assistant Superintendent, conducted an investigation. Several students on Strickland's bus confirmed that they saw Strickland push one student into a seat and another down the bus's stairs. Students said they saw Strickland yelling and reading from a clipboard while the bus was in motion. And students indicated they believed Strickland to be out of control. Strickland's bus aid, Ruby Brown, and school principal Alan Griffin corroborated these students' statements.

Porter thereafter met with Strickland twice to discuss the incident and the investigation. Porter informed Strickland that he would recommend termination,

3

and he explained Strickland's option to appeal to Jarrell. Because Porter lacked authority to terminate Strickland, he placed Strickland on administrative leave pending further action by Jarrell, defendant Charles Nagle (the Board's Superintendent) and the Board.

Strickland filed an appeal with Jarrell. After a meeting in which Strickland explained his version of the incident, Jarrell informed Strickland by letter that he would recommend termination, noting that several students, as well as Brown and Griffin, had told a consistent story about Strickland's misconduct. Also in the letter, Jarrell explained Strickland's right to appeal, directing Strickland to the "Policy GCK (Suspension/Termination of Auxiliary Personnel)," which Jarrell said described the appeal process.

Nagle reviewed Porter's and Jarrell's termination recommendations. He too recommended termination based on his determination that Strickland touched a student in anger. By letter, Nagle advised Strickland of his right to have this recommendation reviewed by the Board. Nagle placed no limits on the materials Strickland could submit in support of his appeal.

Strickland appealed Nagle's termination recommendation to the Board and requested a hearing on his appeal. The Board reviewed Nagle's termination recommendation and the documents Nagle and Strickland submitted and voted

4

unanimously to approve Nagle's recommendation and terminate Strickland. Members of the Board declined to grant Strickland a hearing on the matter, noting that the information before them was sufficient to permit a reasoned decision.

On July 28, 2010, Strickland filed a complaint in state court alleging that, in terminating his employment, the defendants violated his procedural and substantive due process rights. He also alleged that the Board breached the Settlement Agreement between the Board and the Union by failing to provide him with a hearing on his appeal before the Board. He further contended that the defendants violated his First Amendment and Fourteenth Amendment equal-protection rights. He sought a writ of mandamus to remedy these alleged violations.

The defendants removed Strickland's action to federal district court, and the district court granted summary judgment in favor of the defendants. This is Strickland's appeal.

## II.

We review *de novo* the district court's grant of summary judgment. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

5

Civ. P. 56(a).  "We draw all factual inferences in a light most favorable to the non-moving party." *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).

Before we reach the merits of Strickland's appeal, we note that he has expressly abandoned his First Amendment and equal-protection claims; therefore, we decline to address them here.  In addition, because he does not discuss the district court's judgment in favor of the defendants on his substantive-due-process claim, he is deemed to have abandoned that claim.  *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).  Accordingly, we address only whether the Board's process satisfied the Settlement Agreement and Strickland's right to procedural due process.

### III.

1.    Strickland's claims under the Settlement Agreement

Strickland essentially complains that, because he was not afforded an in-person hearing before the Board, the Board violated the terms of the Settlement Agreement.  He first argues that the plain language of the Settlement Agreement entitled him to an in-person hearing.  We disagree.  Even assuming Strickland enjoys contractual rights under the Settlement Agreement, nothing in that agreement requires the Board to permit Strickland to personally appear at a hearing.  Instead, the Settlement Agreement provides that a classified employee

6

such as Strickland "can appeal" to the Board a termination recommendation "before final action to terminate is taken by the Board." Strickland was afforded an appeal. It is undisputed that the Board reviewed Nagle's termination recommendation by examining all evidence Nagle and Strickland provided. The Settlement Agreement did not, by its terms, require the Board to ensure Strickland's presence during the appeal.

Strickland next argues that the Board violated the Settlement Agreement because it did not expand the employee grievance policies as promised. Specifically, he contends that the Settlement Agreement mandated that the Board expand GAE-coded grievance policies, which usually apply only to certified employees, to cover classified employees such as himself. The district court found that the Settlement Agreement's reference to GAE policies was a typographical error, and Strickland submits that this was error.

We conclude that the district court's finding was correct. First, Nagle stated in an affidavit that the Settlement Agreement's reference to GAE policies was erroneous; according to Nagle, the proper notation should have been GCK, the code for classified employees. Strickland has provided no evidence to controvert

Nagle's statement.[1]  Without a meaningful reference to GAE-coded policies in the Settlement Agreement, Strickland's argument that the agreement required the Board to bring classified employees in line with GAE-coded policies fails.

This conclusion is supported by the record.  In September 2007, after it signed the Settlement Agreement, the Board issued a GCK-coded "Suspension/Termination (Auxiliary Personnel)" procedure.  The procedure, which Jarrell referenced in his letter to Strickland, requires that a supervisor meet with an employee to discuss the reasons for the recommended termination and to provide the employee with an opportunity to respond.  Here, Porter and Jarrell met with Strickland, discussed the incident, and permitted Strickland to respond.  The procedure further requires that the supervisor follow the meeting with written notification of the termination recommendation.  Porter and Jarrell did this.

Next, the GCK procedure provides that the employee have an opportunity to appeal the recommendation to the Superintendent.  Strickland had this opportunity.  As mandated by the GCK procedure, Strickland also had an opportunity to have his termination "reviewed" by the Board.  And, importantly, the procedure permits the Board to decide whether or not to entertain an in-person

---

[1] Strickland's citations to the record that he argues contradict Nagle's testimony are not on point and do not create a genuine issue of material fact.

hearing on the appeal.  Here, Strickland obtained Board review and the Board declined to have him appear, citing the completeness of the documentary evidence it reviewed.  Thus, the Board conducted Strickland's termination review in accordance with the GCK policy it promulgated in response to the Settlement Agreement.  Strickland's argument that a genuine issue of material fact exists suggesting the contrary is meritless.

2.      Strickland's claim under the Due Process Clause

Finally, Strickland contends that the district court erred in granting summary judgment in favor of the Board on his procedural-due-process claim.  He argues that he enjoyed a property right in his continued employment with the Board and that, in terminating him without an in-person hearing, the Board deprived him of his property without due process of law.

We conclude, even assuming that Strickland had a property right in his employment, that the Board afforded him adequate pretermination process.  The Due Process Clause of the Fourteenth Amendment requires that a deprivation of property "be preceded by notice and opportunity for hearing appropriate to the nature of the case."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).  The "root requirement" of this right requires "that an individual be given an opportunity for a hearing *before* he is deprived of any significant

9

property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971).

The defendants in this case satisfied these requirements. After Porter investigated the incident on Strickland's bus, Porter met with Strickland twice, in person, to discuss the evidence the investigation revealed. *See Harrison v. Wille*, 132 F.3d 679, 684 (11th Cir. 1998) (concluding that notice was sufficient when, at the first predisciplinary conference, a supervisor told his employee of the charges and evidence against him). Following the meetings, Porter notified Strickland by letter of his decision to recommend termination.

Strickland then received another hearing, this time with Jarrell, where he was permitted to tell his side of the story, supported by any evidence he could provide. When Jarrell recommended termination, he notified Strickland by letter. Also in the letter, Jarrell notified Strickland of the appeal process before Superintendent Nagle.

These recommendations underwent further review before Nagle. And, when Nagle issued a final termination recommendation, he notified Strickland by letter of the process by which Strickland could appeal to the Board. Strickland had an unrestricted opportunity to submit materials for the Board's consideration. Thus, even though he was not physically present while the Board entertained his appeal, Strickland had an opportunity to respond to the allegations against him.

10

*See Barry v. Barchi*, 443 U.S. 55, 65 (1979) (holding that a horse trainer was afforded due process when he "was given more than one opportunity to present his side of the story" before his license was suspended).

The Board's denial of Strickland's in-person hearing request does not amount to a violation of Strickland's right to procedural due process in light of the entire review he received.  *See Loudermill*, 470 U.S. at 546 (emphasizing that requiring more than an "opportunity to present reasons, either in person or in writing, why the proposed action should not be taken" would "intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee"); *Harrison*, 132 F.3d at 684 ("Plaintiff need only be given an opportunity to present his side of the story.").

IV.

Because Strickland failed to establish a genuine issue of material fact as to whether the Board violated the Settlement Agreement or his right to procedural due process, the district court's order granting summary judgment in favor of the defendants is affirmed.[2]

**AFFIRMED.**

---

[2] Despite his argument to the contrary, Strickland is not entitled to mandamus relief under Georgia law.