65 F.3d 169
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Tracy Lee NEICE, Plaintiff-Appellee,
v.
Homer SAWYER, et al., Defendants-Appellants.
 No. 94-5598.
 United States Court of Appeals, Sixth Circuit.
 Aug. 28, 1995.
 
 Before: JONES and NORRIS, Circuit Judges; and DOWD, District Judge.*
 PER CURIAM.
 
 I.
 
 1
 Plaintiff-appellee, Tracy Lee Neice ("Neice"), filed this action in the United States District Court for the Eastern District of Kentucky at Pikeville pursuant to 42 U.S.C. Sec. 1983 claiming a violation of his First Amendment rights of freedom of speech and association under the color of law. The District Court acquired original jurisdiction over Neice's Sec. 1983 claims pursuant to 28 U.S.C. Secs. 1331 & 1343(a), and supplemental jurisdiction over Neice's state law claims pursuant to 28 U.S.C. Sec. 1367(a). Neice claims that Defendant-appellant, Homer Sawyer, individually and in his official capacity as Knott County Judge/Executive ("Judge Sawyer" or "Sawyer") took adverse employment action against him under the color of law in violation of the First Amendment.
 
 
 2
 Judge Sawyer and the defendant Knott County Fiscal Court, moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on Neice's federal claims. By Order of April 7, 1993, District Judge Joseph M. Hood granted summary judgment for Judge Sawyer in his official capacity and for the Knott County Fiscal Court. Before reaching Judge Sawyer's qualified immunity defense, the District Court made a threshold ruling on the alleged constitutional tort that "there is a genuine issue of material fact whether Neice was terminated and if so whether his political association was the motivating factor." Neice v. Sawyer, No. 93-163, slip op. at 6 (E.D.Ky. Apr. 7, 1994) (footnote omitted). The District Court then denied Judge Sawyer's motion for summary judgment on his qualified immunity defense holding that "[s]ince the Court previously held that there is a genuine question of material fact as to whether the plaintiff was in fact terminated and if so whether it was due to his political associations ... summary judgment would be improper...." Id. at 7 (citation omitted). Judge Sawyer appeals the denial of his qualified immunity defense. For the reasons set forth below, the decision of the District Court denying Judge Sawyer's defense of qualified immunity is affirmed.
 
 II.
 
 3
 In February 1993, the plaintiff, Tracy Lee Neice was employed by the Knott County Ambulance Service ("ambulance service") in Knott County, Kentucky, as an Emergency Medical Technician/Driver. Neice worked with other EMT/drivers including Scott Stewart and Kevin Seals, as well as another employee Michelle Stacy. Neice did not hold any type of supervisory position at the ambulance service. David Johnson, director of the ambulance service ("Director Johnson"), was Neice's immediate supervisor. Director Johnson reported to the defendant, Homer Sawyer, Judge/Executive of Knott County.
 
 
 4
 In his elected position as Judge/Executive of Knott County, Sawyer was the chief executive officer of Knott County. See Ky.Rev.Stat.Ann. Sec. 67.705(1). In this county executive position, Judge Sawyer had the statutory "authority to appoint, supervise, suspend, and remove county personnel (unless otherwise provided by state law)" provided the exercise of that authority was made "with the approval of the fiscal court." See Ky.Rev.Stat.Ann. Sec. 67.710(7). The "Fiscal Court" of which Judge Sawyer was the chief executive is the governing body of Knott County and owns, operates, and manages the Knott County Ambulance Service. See Answer to Am.Compl. p 3. The Fiscal Court is staffed by elected magistrates. Members of Judge Sawyer's personal executive staff included Administrative Assistant Shelby Gayheart ("Assistant Gayheart"). See Ky.Rev.Stat.Ann. Sec. 67.711(1) (the county judge/executive may appoint a deputy county judge/executive, and a reasonable number of other assistants to serve at his pleasure). Assistant Gayheart also was a supervisor of Neice. Compare Ky.Rev.Stat.Ann. Sec. 67.711(2) ("The deputy county judge/executive may exercise all administrative powers, duties, and responsibilities of [the judge/executive's office]....").
 
 
 5
 In early 1993, Neice was running as a candidate for the Knott County Coroner Democratic primary election against incumbent Ken Gayheart ("Coroner Gayheart"), a cousin of Assistant Gayheart. Sometime in February 1993, Coroner Gayheart and Assistant Gayheart apparently met at the ambulance service on a nightly basis for four or five nights in a row. Neice assumed that their meetings were political, conducted to intimidate him into dropping out of the campaign. According to Neice, Assistant Gayheart said at one point that he " 'heard [Neice] was coming off and throwing [his] support for [Coroner Gayheart]." See Tracy Neice Aff. of Feb. 22, 1994, p 6 (hereinafter Neice Aff.). At that time Assistant Gayheart was actively campaigning for Coroner Gayheart as well as for his own boss, Homer Sawyer. Neice states that Judge Sawyer and Coroner Gayheart were political allies.
 
 
 6
 Neice recalls that sometime in late January to mid February 1993,
 
 
 7
 Homer Sawyer's wife (Wilma Sawyer) came to the ambulance service and was handing out Homer's bumper stickers. In the presence of others I declined to accept the black and yellow Sawyer for Judge Executive bumper sticker. Wilma Sawyer said that "everyone should support Daddy Homer (a euphemism for Homer Sawyer) because he puts food on your alls' table"[.] When I declined the bumper sticker, she did not appear pleased by my actions.
 
 
 8
 Neice Aff. p 4.
 
 
 9
 According to Neice "it was common knowledge at the ambulance service that we were supposed to support Homer Sawyer's re-election [sic ] efforts." Neice Aff. p 3. Neice refused to support Sawyer in his reelection bid. Instead, Neice openly campaigned for Sawyer's opponent, Robert Short. Apparently, Neice "was the only ambulance employee without a Sawyer sticker on their [sic ] vehicle." Neice Aff. p 5. Moreover, around that same time, Neice recalled that Assistant Gayheart told him that "Homer did not like the fact that I [Neice] was 'running as a political candidate and working for the county.' He went on to say that 'in the end I would end up being for them'...." Neice Aff. p 3.
 
 
 10
 On the afternoon of Friday, February 26, 1993, Neice worked the second shift (3 p.m. to 11 p.m.) as an EMT/driver along with co-worker, EMT Scott Stewart. Neice was scheduled to work through the weekend and on the upcoming Monday. EMT/driver Ken Seals was at the station as well, but on an "on-call" basis, available only for overload work. When a call was received by EMT Stewart for an ambulance at about 3:30 p.m. both Stewart and Neice were scheduled to drive. Because of disagreements between EMTs Stewart and Neice and because of Neice's opinion of EMT Stewart's lack of driving qualifications, Neice allegedly asked EMT Stewart to slide over to the passenger seat. EMT Stewart apparently refused and telephoned Director Johnson to advise him of the situation. The work policies in effect at that time stated that "no employee has authority to refuse to respond to any call, received by this office, at any time otherwise [sic ] instructed by their supervisor." See Defs.' Mot.Summ.J.Ex. 15 (capitalization omitted). Director Johnson told Stewart to advise Neice that Neice was either to make this run, or clock out and go home until further notice, until he could see Judge Sawyer on Monday. According to Neice, EMT Stewart told him, " 'The supervisor told me to tell you if you didn't want to let me drive that you were to clock out and go home.' " See Unemployment Ins. Hr'g, Neice Test. at 91 (hereinafter Neice Test.). Neice punched out and went home. As a result, EMTs Stewart and Seals went on the ambulance run. The incident caused a delay of approximately ten minutes.
 
 
 11
 On the morning of Monday, March 1, 1993, Director Johnson recalls that he spoke to Judge Sawyer about the incident. Judge Sawyer advised Director Johnson to have Neice report back to work that evening. Around midday, Neice, Director Johnson and Administrative Assistant Gayheart met in the County Judge Executive's office in Hindman. Neice acknowledges that he was told to return to work, but states that Assistant Gayheart told him that he could return to work "under certain 'conditions'." Neice Test. at 73-74, 81-82, 92-92; Neice Aff. p 7. According to Neice: "It was obvious that the condition was that I ride with drivers like Scott Stewart who did not have state mandated training." Neice Aff. p 7; Neice Test. at 74. Neice makes no allegation that the unstated "conditions" had to do politics. Before leaving the meeting, Neice told the others that he would like to speak to Judge Sawyer before returning to work and that if the Judge wanted to contact him he knew how to do so. Neice did not return to work that Monday.
 
 
 12
 On Tuesday of the following week, March 9, 1993, Neice visited Judge Sawyer at Sawyer's office to speak with him in person. Because Judge Sawyer had been out of town, Neice was unable to meet with him when he had stopped by the office a few days earlier. Neice recalls their March 9 meeting as follows: "When I did get to talk to him, he said he would 'let the Fiscal Court decide my fate'. Homer was well aware of my concern about the evasive driving course. Homer very sarcastically said that he 'hoped that politics had nothing to do with' my situation." Neice Aff. p 7.
 
 
 13
 The next morning on March 10, 1993, the Fiscal Court held a closed session during its regular meeting to discuss Neice's situation. Judge Sawyer recalled that he told the magistrates of the Fiscal Court that
 
 
 14
 Neice had refused to go back to work, had been told to go back to work, and that we had assumed that he had quit after staying off for a week and then coming back to me to talk to me about his job after a week's time, that we felt that the proper procedure was that the man had quit, and that's exactly the way we presented it to the Fiscal Court.
 
 
 15
 Sawyer Dep. at 11-12. Neice was allowed to stay for the closed session. The Fiscal Court came out of closed session having taken no action. According to Neice, "[a] magistrate (Darrell Short) asked that I be allowed to speak. I tried to speak, but Homer cut me off. The Fiscal Court took no action, except that Homer announced that as far as he was concerned I 'no longer worked for the County, and that this matter was closed.' " Neice Aff. p 7.[1] Neice considers the day of the Fiscal Court meeting to be the day he was discharged.
 
 III.
 
 16
 Since this matter was submitted, the United States Supreme Court in Johnson v. Jones, --- U.S. ----, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), held that, in general, when a district court's order resolves "a fact-related dispute about the pretrial record, namely whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial," the order cannot be considered a final appealable order pursuant to 28 U.S.C. Sec. 1291. Id. at 2153. See also id. at 2159 ("a defendant, entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial"). Consequently, without intimating any opinion on the scope of Johnson's holding in light of other precedent of the Supreme Court and this Circuit, the Court finds that it would be inappropriate under the facts of this particular case to review the District Court's decision that genuine issues of fact preclude summary judgment on whether Neice was terminated and if so whether his political association was the motivating factor. For like reasons, the Court finds it inappropriate to review Judge Sawyer's additional claim of error that the same alleged adverse employment decision would have been reached even in the absence of protected conduct.
 
 IV.
 
 17
 Judge Sawyer also appeals the denial of summary judgment on his qualified immunity defense. As to the District Court's decision that genuine issues of material fact preclude summary judgment on qualified immunity, the Court holds that even if it has jurisdiction to review that ruling in light of Johnson, the law was clearly established in early 1993 that the First Amendment forbids government officials from taking adverse employment action against public employees because of party affiliation or a failure to support a certain political party, unless party affiliation or support is an appropriate requirement for the position in question. See Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990) (following Elrod v. Burns, 427 U.S. 347 (1976) (unconstitutional for a newly-elected sheriff to replace office staff with members of his own party) and Branti v. Finkel, 445 U.S. 507 (1980) (unconstitutional for a newly-appointed public defender to discharge assistants because they did not have the support of the Democratic party)). See also Faughender v. City of N. Olmsted, 927 F.2d 909, 912 (6th Cir.1991) (acknowledging that Rutan extended First Amendment protections "to other common varieties of patronage preferment ..."). As well, it was clearly established in early 1993 that constitutional scrutiny reaches employment decisions that "adversely affect the terms of employment" where public employees "feel a significant obligation to support political positions held by their supervisors, and to refrain from acting on the political views they actually hold, in order to progress up the career ladder." See Rutan, 497 U.S. at 73. See also Newman v. Voinovich, 986 F.2d 159, 162 (6th Cir.) ("Specifically, what Elrod, Branti and Rutan establish is that political patronage should play no role in government decision-making regarding non-policymaking public employment decisions."), cert. denied, --- U.S. ----, 113 S.Ct. 3041 (1993).
 
 
 18
 In this case the parties agree that Neice's conduct in running for electoral office and in choosing to support political candidates other than Judge Sawyer or his political allies constitutes constitutionally protected conduct. As well, there is no contention that party affiliation is an appropriate requirement for the effective performance of the emergency medical technician job for the ambulance service. See generally Rice v. Ohio Dep't of Transp., 14 F.3d 1133, 1140-41 (6th Cir.) (explaining when politically-motivated employment action is permitted), cert. denied, --- U.S. ----, 114 S.Ct. 2678 (1994). Nor does Judge Sawyer dispute that his actions during all relevant times in this dispute were taken under the color of law. See Am.Answer p 3. Thus, government officers of reasonable competence in Judge Sawyer's position could not disagree on whether the First Amendment permitted them to use the political affiliation or the political expressions of county emergency medical technicians as a substantial or motivating factor in taking adverse employment action against those employees. Compare Christian v. Belcher, 888 F.2d 410 (6th Cir.1989) (analyzing claims of unconstitutional political retaliation filed against a Kentucky county judge/executive under the First Amendment and 42 U.S.C. Sec. 1983) with Williams v. Commonwealth of Kentucky, 24 F.3d 1526, 1537 (6th Cir.) ("[W]here the employee has spoken out on matters of great public concern, and these statements apparently had only minimal effect on the efficiency of the office ... [it] is not a case where the imprecision of the [First Amendment particularized] standard makes a difference.") (law sufficiently clear in May 1990), cert. denied, --- U.S. ----, 115 S.Ct. 358 (1994). If indeed Neice could prove that impermissible criteria motivated Judge Sawyer to take adverse employment actions against him, there could be no qualified immunity for that conduct.
 
 V.
 
 19
 The decision of the District Court which denied the motion of Defendant-appellant Homer Sawyer, in his individual capacity, for summary judgment on his qualified immunity defense is AFFIRMED. The Court expresses no opinion on the other claimed errors of the District Court. This case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The record does not reflect the relationship if any between Magistrate Darrell Short and candidate Robert Short