**Willard CONN, Plaintiff,**

v.

**William M. DESKINS, et al., Defendants.**

**Civil No. 16–87–ART**

United States District Court, E.D. Kentucky, Southern Division. Pikeville.

Signed 03/01/2017

926

Joe F. Childers, Joe F. Childers & Associates, Lexington, KY, for Plaintiff.

Jonathan C. Shaw, Porter, Banks, Baldwin & Shaw PLLC, Paintsville, KY, for Defendants.

## MINUTE ENTRY ORDER

Amul R. Thapar, United States District Judge

On February 28, 2017, the Court held a telephonic status conference in this action. *See* R. 78. Joe Childers and Bethany Baxter represented plaintiff Willard Conn. Jonathan Shaw represented the defendants. Kati Bramble was the courtroom deputy. Joan Averdick was the court reporter. During the conference, the Court advised the parties of its summary judgment rulings because trial is to start Monday. The Court further promised that it would provide a minute entry order detailing its rulings. This is that minute entry order. Finally, the Court apologizes once

again for providing these rulings and this minute entry order just days before trial.

## DISCUSSION

 **Wrongful Discharge (Count I).** Unless the parties agree otherwise, employment in Kentucky is "at will." *Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95, 98 (Ky. Ct. App. 2000). Generally speaking, then, an employer may terminate a worker "for good cause, for no cause, or for a cause that some might view as morally indefensible," all without making a civil case of the personnel matter. *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983). But there is an exception: even an at-will employee can sue for wrongful discharge if (1) his termination was "contrary to a fundamental and well-defined public policy" that is (2) "evidenced by a constitutional or statutory provision." *Mitchell v. Coldstream Labs., Inc.*, 337 S.W.3d 642, 645 (Ky. Ct. App. 2010) (citing *Firestone*, 666 S.W.2d at 733). "Whether a public policy is fundamental, well-defined, and evidenced by existing law is a question of law for the court to decide." *Id.* (citing *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985)).

 Conn claims that his discharge violated the "fundamental and well-defined public polic[ies]" reflected in Sections 1, 2, and 14 of the Kentucky Constitution. *See* R. 1–1 ¶ 51; R. 48 at 34–35. But Conn has not shown that a wrongful discharge tort can take root in these constitutional provisions. Kentucky courts have rejected wrongful discharge claims predicated on alleged violations of the free speech rights protected by Section 1 of the Kentucky Constitution and its federal counterpart (the First Amendment). *See, e.g., Mendez v. Univ. of Ky. Bd. of Trustees*, 357 S.W.3d 534, 546–47 (Ky. Ct. App. 2011); *Baker v. Campbell Cty. Bd. of Educ.*, 180 S.W.3d 479, 483–84 (Ky. Ct. App. 2005); *Jones v. Perry Cty. Fiscal Court*, 185 F.Supp.3d 947, 964–65 (E.D. Ky. 2016). They have done much the same with respect to Section 14. *See, e.g., Boykins v. Housing Auth. of Louisville*, 842 S.W.2d 527, 530 (Ky. 1992); *Baker*, 180 S.W.3d at 484. Finally, Conn has not identified any authority establishing that Section 2 sets forth a "fundamental and well-defined public policy" within the meaning of *Firestone*. He cites two cases, but both only describe Section 2 in broad strokes before measuring a statute's validity against it. *See* R. 48 at 35–36 (citing *Louisville Shopping Ctr. Inc. v. City of St. Matthews*, 635 S.W.2d 307, 313 (Ky. 1982), and *Sanitation Dist. No. 1 of Jefferson Cty. v. City of Louisville*, 308 Ky. 368, 213 S.W.2d 995 (1948)). The court will therefore **GRANT** the defendants' motion for summary judgment on this claim. *See* R. 46–1 at 26–27.

 **Ky. Const. § 2 (Count II).** The second entry in Kentucky's Bill of Rights is a promise of a limited government constrained by rules, reason, and rights: "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." Ky. Const. § 2. A laudable principle, but one Conn says the defendants forgot when they fired him without just cause or due process. R. 1–1 ¶¶ 56–61. As compensation for this transgression, Conn seeks money damages. *Id.* ¶¶ 60–61, 86(A)–(B). The problem is that Kentucky has not recognized a private right of action akin to *Bivens* to recover money damages for a violation of the state's constitution. *See St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 536–38 (Ky. 2011); *Clark v. Kentucky*, 229 F.Supp.2d 718, 727 (E.D. Ky. 2002); *Faul v. Bd. of Educ. of Danville Indep. Schs.*, No. 5:12-CV-277-KSF, 2013 WL 1511746, at *2–3 (E.D. Ky. Apr. 9, 2013). The Court will therefore **GRANT** the defendants' motion for summary judgment as to this claim. *See* R. 46–1 at 26.

■ **Breach of Contract (Count III).** Conn also seeks damages from the defendants for breaching his employment contract. R. 1–1 ¶¶ 62–70. The defendants concede, for purposes of summary judgment only, that the "for cause" provision in the Pike County Administrative Code was sufficient to create an *implied* employment contract. R. 46–1 at 17–18. But they say that does not matter because the county is immune from suit on an implied-in-law contract. *Id.* at 18. Conn would rather you call the agreement a unilateral, written contract. R. 48 at 37–38 (citing *Furtula v. Univ. of Ky.*, 438 S.W.3d 303, 311–15 (Ky. 2014) (Noble, J., dissenting)). The reason being that Ky. Rev. Stat. § 45A.245 waives the Commonwealth's immunity with respect to actions for breach of a "written contract with the Commonwealth." R. 48 at 37–38.

■ The Court need not resolve whether, assuming it exists, Conn's employment contract is implied-in-law or unilateral and written. Either way, Conn cannot sue the defendants for its breach. The defendants were not individually parties to any such contract, and Conn has not alleged that they tortiously interfered with it. So any part the defendants played in its formation or breach was limited to their representative roles. But any breach of contract claim brought against the defendants in their official capacities is in truth a claim against the entity for which they work: the Pike County Fiscal Court. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Commonwealth v. Harris*, 59 S.W.3d 896, 899 (Ky. 2001). The Fiscal Court, in turn, is an arm of Pike County, and so is entitled to share in the county's sovereign immunity. *See Doe v. Magoffin Cty. Fiscal Court*, 174 Fed.Appx. 962, 971 (6th Cir. 2006) ("Kentucky courts have treated fiscal courts as county governments and thus have permitted fiscal courts to share sovereign immunity with county governments."). As a result, absent an express waiver of the county's immunity, the Fiscal Court is not amenable to suit for breach of contract. *See Harris*, 59 S.W.3d at 900. No such waiver exists here. Section 45A.245 applies only to "an action against *the Commonwealth*" for breach of a "lawfully authorized written contract *with the Commonwealth.*" Ky. Rev. Stat. § 45A.245 (emphasis added). Here, Conn's employment contract is with Pike County, not the Commonwealth of Kentucky. Thus, by its own terms, the waiver of immunity in Section 45A.245 does not reach as far as this case. *See George M. Eady Co. v. Jefferson Cty.*, 551 S.W.2d 571, 572 (Ky. 1977); *Blankenship v. Lexington–Fayette Urban Cty. Gov't*, No. 2008-CA-2044-MR, 2016 WL 3900726, at *5–6 (Ky. Ct. App. July 8, 2016); *Trace Creek Constr., Inc. v. Harlan Cty. Fiscal Court*, No. 2007-CA-328-MR, 2008 WL 1991647, at *2–3 (Ky. Ct. App. May 9, 2008). The Court will therefore **GRANT** judgment for the defendants on this claim. *See* R. 46–1 at 16–19.

**State Law Defenses.** In addition to challenging Conn's state-law claims on the merits, the defendants raise three general state-law defenses. First, they argue that they are entitled to qualified immunity from any individual capacity claims brought under state law. R. 46–1 at 30–32. Second, the defendants argue that they are insulated from Conn's state-law charges because they relied on the advice of counsel. *Id.* at 19, 27. Because the Court has granted summary judgment for the defendants on Conn's state-law claims, it need not address these two defenses. But it is worth taking up their third defense: sovereign immunity. *Id.* at 29–30.

When a plaintiff sues a government employee in his official capacity, he engages in a bit of fiction. It is not so much the

official he is after, but the government body for which he works. The claim, in other words, passes through the official and runs against the public body itself. *See Graham*, 473 U.S. at 165–66, 105 S.Ct. 3099; *Harris*, 59 S.W.3d at 899. But claims of this sort carry unique complications; in this case, sovereign immunity. Judge Executive Deskins and the defendant magistrates are employees or agents of the Pike County Fiscal Court, and so share in any immunity it enjoys. *Jones*, 185 F.Supp.3d at 961. As discussed above, Kentucky in turn treats fiscal courts as county governments covered by the county's sovereign immunity. So unless a fiscal court (*i.e.*, the county) waives its immunity, it cannot be sued under state law. *Doe*, 174 Fed.Appx. at 971; *Shepherd v. Floyd Cty.*, 128 F.Supp.3d 976, 978 (E.D. Ky. 2015); *Scholl v. Harmon*, No. 5:14-CV-270-JMH, 2014 WL 5306665, at *1 (E.D. Ky. Oct. 15, 2014). With the exception of his breach-of-contract claim, Conn fails to argue that the fiscal court waived its immunity to his state-law claims. As discussed, too, the county's purported waiver of immunity to the breach-of-contract claim is not what Conn makes it out to be. Thus, to the extent Conn asserts state-law claims against the defendants in their official capacities, those claims fail for this—another, independent—reason. *See* R. 46–1 at 29–30.

▉▉▉ **First Amendment (Count IV).** Conn claims that the defendants retaliated against him in violation of his First Amendment rights. R. 1–1 ¶¶ 71–78. No one disputes that firing someone is an "adverse action" sufficient to "chill a person of ordinary firmness from continuing to engage" in the activity that prompted the firing. *Leary*, 228 F.3d at 737; *see also See v. City of Elyria*, 502 F.3d 484, 494 (6th Cir. 2007). As a result, Conn may recover on his First Amendment claim if

he shows (1) that he engaged in constitutionally protected speech and (2) that the defendants' decision to discipline him was "motivated at least in part as a response" to his protected speech. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

▉▉▉ Conn has shown that he was engaged in a protected activity. *See McMurphy v. City of Flushing*, 802 F.2d 191, 197 (6th Cir. 1986) (noting the court must make this determination, as a matter of law, based on "the content, form, and context of a given statement, as revealed by the whole record" (internal quotation marks omitted) ). Conn's speech—or rather, refusal to speak—regarding the proposed occupational tax was protected speech on a matter of public concern. *See Bieluch v. Sullivan*, 999 F.2d 666, 671 (2d Cir. 1993) (holding speech concerning "tax expenditures" and "town budgets" concerned "matters of utmost public concern"). Nor does it matter that Conn's "protected activity" was the refusal to speak out in support of the tax: "The protection of the first amendment extends equally to 'the right to speak freely and the right to refrain from speaking at all.' " *Langford v. Lane*, 921 F.2d 677, 680 (6th Cir. 1991) (quoting *Wooley v. Maynard*, 430 U.S. 705, 714, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977)); *see also Sykes v. McDowell*, 786 F.2d 1098, 1104 (11th Cir. 1986) ("A public employee who positively asserts the right not to speak when ordered to support his employer is within the protection of the first amendment.").

▉▉▉ Moreover, Conn's interest in exercising his free speech rights with respect to a matter of public concern outweighs "the interest of the [fiscal court], as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The defendants argue that they

had an interest in passing the occupational tax to help fund their operations, and that additional public support would have made that a little easier. R. 46–1 at 23. But there is no evidence that the county was in "a state of near-crisis" or that "radical and decisive action" was required to "improve the [county's] functioning." *Leary*, 228 F.3d at 738. Nor is there any evidence that Conn's refusal to speak was disruptive to the county's operations or somehow prevented him from doing his job. *Id.* The speech requested would also have occurred in public, on Conn's own time. *See Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415 n.4, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) (noting that the time, manner, and place in which a public employee's speech is delivered may affect whether the employer's efficiency is threatened). Under the circumstances, the defendants have not made the "particularly strong showing" necessary to overcome Conn's free speech rights. *Leary*, 228 F.3d at 738; *see also, e.g., Miller v. City of Canton*, 319 Fed. Appx. 411, 417–18 (6th Cir. 2009).

▆▆▆ Ultimately, though, the jury will have to decide whether Conn's refusal to speak out in support of the tax was a "substantial or motivating factor" in the defendants' decision to terminate him. *Leary*, 228 F.3d at 737. "Generally, in the First Amendment context, a defendant's motivation for taking action against the plaintiff is usually a matter best suited for the jury." *Benison v. Ross*, 765 F.3d 649, 661 (6th Cir. 2014) (internal quotation marks omitted). This case is no exception. Conn likely could not survive summary judgment if all he noted is that the fiscal court fired him several months after he refused to speak out in support of the tax. *See Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010). But Conn has done more than that. He has testified that he was approached by county officials

about the tax and warned by others to toe the line. He points out that some officials have admitted approaching him about the tax. And he notes that the investigations of his conduct started shortly after those conversations and the hearing on the tax. Finally, while Conn refused to speak out and was fired, another employee who spoke in support of the tax was apparently promoted sometime thereafter. *See Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010) ("A causal link can be shown through direct or circumstantial evidence[.]").

Ultimately, the jurors might decide that the tax issue played no role in Conn's termination, or that the defendants had other valid reasons for terminating him. *See, e.g., id.* at 208 ("If the plaintiff meets his burden of establishing retaliation, the burden shifts to defendants 'to prove by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct.'"). But with the facts surrounding Conn's termination in dispute, that will have to be the jury's call. The Court will therefore **DENY** the defendants' motion for summary judgment on this claim. *See* R. 46–1 at 19–24.

▆▆▆ **Due Process (Count V).** Determining whether the defendants violated Conn's due process rights requires a two-step analysis. *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000). First, the Court must ask whether Conn had a protected property interest in his continued employment. Second, assuming he had a property interest, the question becomes what process Conn was due before the fiscal court finally deprived him of it. *Id.* at 741–42.

▆▆▆ While their protection may be dictated by the Due Process Clause, property interests are not themselves creatures of the Constitution. *Id.* at 741. "Rather, they are created and their dimensions are

defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *see also Dean v. City of Bay City*, 239 Fed.Appx. 107, 112 (6th Cir. 2007) ("[C]ourts must look to an independent source, such as state law, to determine whether or not a property interest exists."). To establish that he has a property interest at stake here, Conn must show more than "[a] mere 'unilateral expectation' of continued employment." *Kennard v. Wray*, 19 F.3d 19, at *4 (6th Cir. 1994) (per curiam) (unpublished table disposition). He must establish a "legitimate claim of entitlement" to his position. *Roth*, 408 U.S. at 577, 92 S.Ct. 2701.

■■ Genuine issues of material fact preclude the Court from answering this question at this time. Initially, the defendants conceded that the "for cause" provision in Section 490(3) of the county code gave Conn a protected property interest in his job. R. 46–1 at 13. Indeed, a showing that an employee can be fired only "for cause" is ordinarily "sufficient to satisfy the first step of the [due process] analysis." *Dean*, 239 Fed.Appx. at 112. But in their reply brief and again in response to Conn's own motion, the defendants walk back that concession. Now they say that Conn forfeited his "for cause" protection when he agreed in November 2015 to be put on probation for one year. *See* R. 49 at 15–17; R. 50 at 1–3. There is authority for the notion that a probationary employee does not have a property interest in his continued employment because he can presumably be fired without cause. *See, e.g., Heino v. Cty. of Oakland*, 815 F.2d 703, 1987 WL 36827 at *2–3 (6th Cir. 1987) (per curiam) (unpublished table disposition)

(collecting cases). At the same time, the county code does not appear to address what happens when a permanent, administrative employee is placed on probation. Instead, it simply says that "[a]*ll* administrative personnel ... may be dismissed ... for cause." Pike County Admin. Code § 490(3) (emphasis added). Nor do we know whether the fiscal court has a separate policy or custom addressing this sort of situation. How, for example, has it handled such probationary discipline in the past? Without more guidance on how Conn's probationary term impacted his standing under the county code, the Court cannot say whether he still retained a legitimate claim of entitlement to his continued employment. *See, e.g., Christian v. Belcher*, 888 F.2d 410, 416–17 (6th Cir. 1989); *Yashon v. Gregory*, 737 F.2d 547, 554 (6th Cir. 1984).

■■ If it turns out that Conn could only be discharged for cause, then he was entitled to pre-termination process. *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004) ("For public employees who can only be fired for cause, the Supreme Court has held, specifically, that a pretermination proceeding is required." (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ). That pre-termination process need not have been elaborate—especially where, as here, more elaborate post-termination process was available. *Leary*, 228 F.3d at 742–43. It is simply meant to serve as "an initial check against mistaken terminations by the employer—an opportunity to determine if there are reasonable grounds to believe the charges against the employee are true and if they support any proposed action against [him]." *Buckner v. City of Highland Park*, 901 F.2d 491, 496 (6th Cir. 1990). To this end, the employee is owed (1) "oral or written notice of the charges against him," (2) "an explanation of the

employer's evidence," and (3) "an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 546, 105 S.Ct. 1487.

When the parties debate not only what Conn was told and when, but also why he was ultimately fired, summary judgment is inappropriate. For purposes of his own motion, Conn assumes that the allegations against him were discussed with him at the September 2015 meeting. R. 47–1 at 4 n.5. Yes, John Doug Hays later investigated those allegations and authored a report for the fiscal court about them, thereby prompting Conn's suspension and termination. But there is no clear rule that Conn was entitled to a copy of that report since he already had a meeting with his supervisors, where he learned of the allegations and had a chance to respond. *See Collyer v. Darling*, 98 F.3d 211, 224 (6th Cir. 1996). Viewing the facts in the light most favorable to the defendants, Conn appears to have also been aware of Hays's investigation, yet he took no further steps to share his side of the story—even after he learned that he was facing probation. Perhaps, then, a jury will believe Conn was afforded all the process he was due. *See, e.g., Buckner*, 901 F.2d at 495–96; *Dean*, 239 Fed.Appx. at 113.

▅▅▅ Now viewing the facts in the light most favorable to Conn, the picture appears even less rosy for the defendants. For purposes of their motion, the parties dispute who was present at the September meeting, what was discussed, and even when it happened. Conn was later given the gist of the allegations over the phone, but even then he was given the impression they were no big deal. Conn was present at the November fiscal court meeting, but he was neither invited into the executive session nor provided with a copy of Hays's report or the evidence behind it. Neither was Conn given advance notice that he faced termination at the December meeting. And again, while Conn was present, he was not invited to speak. The Court cannot say, as a matter of law, that the defendants provided Conn with adequate process when, viewing the facts in this light, they failed to share the evidence against him or give him advance notice of the charges motivating his termination. *See Lane v. City of Pickerington*, 588 Fed. Appx. 456, 464–65 (6th Cir. 2014); *McDaniel v. Princeton City Sch. Dist. Bd. of Educ.*, 45 Fed.Appx. 354, 358–59 (6th Cir. 2002).

▅▅▅ However, to the extent Conn claims that he was afforded insufficient post-termination process, he has waived that claim. Section 490(5) of the county code set out a grievance procedure for aggrieved employees like Conn. If Conn believed his termination was improper, he could have filed a written complaint with Judge Executive Deskins. Assuming they could not resolve the matter informally, Conn was permitted to request a hearing before the fiscal court, at which he could appear with counsel. Conn never took either step. He argues now that he was justified in not appealing his termination because he did not know the basis for it. But this argument ignores the fact that Conn could have raised this same issue in the grievance process. For all the Court knows, Conn could have even obtained the Hays report through the grievance process instead of waiting on his freedom of information request. Because Conn nevertheless decided not to give the county a chance to rectify its alleged mistakes after the fact, he cannot now complain that the county afforded him inadequate post-termination process. *See Farhat*, 370 F.3d at 596–97; *Leary*, 228 F.3d at 744; *Dean*, 239 Fed.Appx. at 113.

The Court will therefore **GRANT IN PART** and **DENY IN PART** the defen-

dants' motion for summary judgment on Conn's due process claim. *See* R. 46–1 at 11–16. It is granted to the extent Conn raises a post-termination claim and denied as to Conn's pre-termination claim. Conn's motion for partial summary judgment, R. 47, is **DENIED**.

 **Municipal Liability.** As discussed, any claims that Conn asserts against the defendants in their official capacities are—functionally if not formally—claims against the fiscal court and Pike County. *See Graham*, 473 U.S. at 165–66, 105 S.Ct. 3099. For Conn's state-official capacity claims, that meant sovereign immunity and the end of the road. For his federal claims, the journey is not quite over. Sovereign immunity, it turns out, does not protect state officials from a federal constitutional tort asserted under 42 U.S.C. § 1983. Why? Because federal, not state law, determines when a party is immune from a federal claim. And while counties are immune from suit under Kentucky law, they are not under federal law. "By its terms, the protection afforded by [the Eleventh] Amendment is only available to 'one of the United States.'" *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 400, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). As a result, the Supreme Court has "consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.'" *Id.* at 401, 99 S.Ct. 1171. The defendants are therefore subject to suit on Conn's federal constitutional claims. *Sartaine v. Pennington*, 410 F.Supp.2d 584, 591–92 (E.D. Ky. 2006). Moreover, because the fiscal court is a "person" within the meaning of Section 1983, Conn has a vehicle for pursuing these same claims against the fiscal court. *See Monell v. Dep't of Soc. Servs.*, 436 U.S.

658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

 Whether Conn can pursue them successfully is another question. Conn cannot simply attribute the defendants' unlawful conduct to the fiscal court like a negligence plaintiff might blame a pizzeria for a delivery man's careless driving. Section 1983 and *respondeat superior* do not go hand-in-hand. *Id.* ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Instead, Conn must show that the alleged violations of his constitutional rights "occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). There a few ways he might do that:

> A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Id.* Conn takes one shot each down the first three paths to municipal liability. *See* R. 48 at 29–30. Two miss the mark, while the third requires additional briefing by the parties.

 Conn contends first that the defendants "had an unconstitutional official policy of denying employees due process." *Id.* at 29. As support, Conn argues that Section 490(5) of the county code is "constitutionally deficient" because it discusses post-but not pre-termination process. *Id.* at 30. But Conn cites no authority, and the Court is aware of none, suggesting that due process required the county to formal-

ize its pre-termination procedures in writing. After all, officials are afforded substantial leeway in determining what pre-termination process to provide in a given case. *Buckner*, 901 F.2d at 494. Nor does the fact that the code formalizes the county's post-termination grievance process prove that the fiscal court has "an illegal official policy" of denying pre-termination process to tenured employees.

■ Conn next argues that the defendants "inadequately trained and/or supervised" Hays. R. 48 at 29. But the only evidence Conn offers in support is that Hays played a role in denying him due process at the fiscal court meetings. *Id.* at 30. If the fact that an employee violated a constituent's constitutional rights were proof enough to show that the municipality had a policy of inadequate training, then every Section 1983 claim would run against the municipality. Proof that the violation occurred would be synonymous with proof that it occurred because of a municipal policy or custom. Evidence of the causal relationship would become superfluous.

■ Conn offers a third and final theory: that the defendants, who had "final decision making authority" over his employment, "ratified" his unlawful termination. *See* R. 48 at 29–30; *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005) ("Municipal liability may attach for policies promulgated by the official vested with final policymaking authority[.]"). To head down this this road, Conn must show that an official "responsible for establishing final policy with respect to the subject matter in question"—here, his termination—made a "deliberate choice to follow a course of action ... from among various alternatives." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). He must also show that this official's chosen course of action was "the moving force behind or

cause of" his harm. *Burgess*, 735 F.3d at 479.

As Pike County's chief executive, Judge Executive Deskins had "authority to appoint, supervise, suspend, and remove county personnel." But he could do so only "with the approval of the fiscal court." Ky. Rev. Stat. § 67.710(7); *see also Neice v. Sawyer*, 65 F.3d 169, ——, 1995 WL 510022 at *1 (6th Cir. 1995) (per curiam) (unpublished table disposition). Thus, while Deskins could recommend that Conn be fired—as he did—the final decision belonged to the fiscal court. *Click v. Thompson*, 17 F.Supp.3d 655, 660–61 (E.D. Ky. 2014); *Jones*, 185 F.Supp.3d at 960–61.

■ Since each of the defendants is also a member of the fiscal court, *see* Ky. Rev. Stat. § 67.040, the question arises whether their collective vote opened Pike County up to liability. It may have. After all, the fiscal court acted in an official capacity on behalf of the county to terminate one of its employees—the very act of which Conn complains. Moreover, Conn has pointed to facts suggesting that some or all of the magistrates voted knowing the allegedly unlawful motive for his termination: Deskins, who had a vote on the court, was allegedly angered by Conn's failure to support the occupational tax. Additionally, the defendants were present during the December fiscal court meeting and cast their votes without offering Conn a chance to speak—despite allegedly knowing that Deskins had not given him advance notice of the charges. Taken together, a reasonable jury could conclude that the fiscal court knowingly approved not just Deskins's recommendation, but his motives too. *See, e.g., City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion); *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117–18 (6th Cir. 1994); *Adkins v.*

*Bd. of Educ. of Magoffin Cty.*, 982 F.2d 952, 958–59 (6th Cir. 1993).

There is some Sixth Circuit case law that could be read to suggest otherwise. The Sixth Circuit has explained that "a county fiscal court's approval of a judge/executive's employment recommendations could not subject the county to § 1983 liability." *Whittle v. Floyd*, 202 F.3d 271, 1999 WL 1336078 at *3 (6th Cir. 1999) (unpublished table disposition) (citing *Christian v. Belcher*, 888 F.2d 410, 414–15 (6th Cir. 1989)). Indeed, the Sixth Circuit determined in that same case that the judge executive was "the county's final policymaker" with respect to the issue of recommending an employee's reappointment. *Id.* at 1999 WL 1336078 at *5.

But it might be inadvisable to read *Christian* and *Whittle* so broadly. Both involved claims brought by an employee who was not *rehired* after his term automatically ended with the conclusion of an administration. *See Christian*, 888 F.2d at 412; *Whittle*, 202 F.3d 271, 1999 WL 1336078 at *1. And under Kentucky law, the decision whether to re-nominate someone—the decision complained of in those cases—rested solely with the judge executive. The fiscal court could only accept or reject his nominee. *See* Ky. Rev. Stat. § 67.710(7). By contrast, in this case, Conn says it was his actual *termination* (not Judge Executive Deskins's recommendation) that violated his constitutional rights. And the power to make *that* decision rested with the fiscal court. *See id.*; *Click*, 17 F.Supp.3d at 660–61; *Jones*, 185 F.Supp.3d at 960–61.

However, neither party has addressed the tension between these cases. Without the benefit of developed arguments on the issue, the Court cannot say that either party would be entitled to judgment as a matter of law on Conn's municipal liability claims. The Court will therefore **DENY** the defendants' motion on this issue. *See* R. 46–1 at 28–29. The parties may take it up again at the directed verdict stage, but they must be prepared to answer whether the fiscal court's vote subjected the county to liability.

▮▮▮ **Federal Qualified Immunity.** The existing factual disputes surrounding Conn's due process and First Amendment claims prevent the Court from granting summary judgment for the defendants based on federal qualified immunity. The law has been clearly established that a public employee's free speech rights encompass the right not to speak, *see Langford*, 921 F.2d at 680, and that a public employee may not be fired as retaliation for exercising his free speech rights on a matter of public concern, *see Kiessel v. Oltersdorf*, 459 Fed.Appx. 510, 515 (6th Cir. 2012). Additionally, the law was clearly established long before December 2015 that a public employee is entitled to a pre-termination hearing. *See Silberstein v. City of Dayton*, 440 F.3d 306, 316 (6th Cir. 2006). Of course, the defendants respond that the law is not clearly established that a probationary employee must be afforded such process. But the defendants' argument takes as given that Conn's "probation" meant that he could be terminated without cause—an issue which is in dispute. Nor have the parties addressed whether, even if the "for cause" provision still applied, a reasonable officer might have thought it no longer did. *Cf. id.* at 316–18 (examining whether an employee's classified status was sufficiently clear that a reasonable official would have known that he was entitled to a pre-termination hearing). For now, then, the Court will **DENY** the defendant's motion for summary judgment on the basis of federal qualified immunity. *See* R. 46–1 at 24–25.

## CONCLUSION

Accordingly, and for the reasons stated on the record, it is **ORDERED** as follows:

(1) Willard Conn's motion for partial summary judgment, R. 47, is **DENIED**.

(2) The defendants' motion for summary judgment, R. 46, is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to Conn's wrongful discharge, Section 2, breach of contract, and post-termination due process claims. It is denied as to the pre-termination due process and First Amendment claims, as well as to the issue of municipal liability under 42 U.S.C. § 1983.